IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:03CV223

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Plaintiff, ) ) Vs. ) ) HERMAN E. GREER; HERMAN E. ) GREER, Trustee of Greer Farm Trust; ) HELEN G. McKINNEY; HELEN G. ) McKINNEY, Executrix of the Estate of ) Elise Greer; STATE OF NORTH ) CAROLINA; TRANSYLVANIA ) COUNTY; LISA GREER WHITMIRE; ) and TIMOTHY C. WHITMIRE, ) Trustee of Greer Farm Trust, ) ) Defendants. ) ) | MEMORANDUM OF OPINION |

**THIS MATTER** came on for trial before the Court without a jury on the Plaintiff's motion to foreclose on a 20-acre tract of land currently held by the Greer Farm Trust. Subsequently, the Defendant filed motions to proceed in *forma pauperis* on appeal and to receive a transcript of the trial at Government expense.

### I. FACTUAL AND PROCEDURAL HISTORY

The United States entered assessments against the Defendant, Herman E. Greer, Jr. ("Greer" or "the Defendant") for his failure to pay income taxes for the years 1986 through 1996. The assessments show Greer owed $320,554.37 in unpaid taxes, penalties, and interest as of August 3, 2004, with further interest and penalties accruing from that date forward. **United**

**States' Memorandum in Support of Motion for Summary Judgment ["Plaintiff's Memorandum"], filed October 14, 2004, at 3.** As a result, federal tax liens arose against all property and rights to property belonging to the Defendant. *See* **26 U.S.C. §§ 6321, 6322.** On March 17, 2005, this Court entered summary judgment against the Defendant for his tax liabilities, and issued an order of foreclosure and decree of sale as to an one-acre tract of land owned by the Defendant. **Memorandum and Order, filed March 17, 2005, at 14; Judgment, filed March 17, 2005, at 2; Decree of Sale, filed March 17, 2005.** In the same Memorandum and Order, the Court denied the Plaintiff's summary judgment motion to foreclose and decree the sale of a 20-acre tract of land currently held by the Greer Farm Trust. *Id.* The Court found that there was a genuine issue of fact for trial as to whether the Defendant fraudulently conveyed the land to his mother in 1991 and, alternatively, whether the Greer Farm Trust was the alter ego or nominee of the Defendant. *Id.*, **at 10, 13.** A trial before the Court without a jury was held on these issues on May 9, 2005. After considering the evidence presented at summary judgment and trial, the Court enters judgment for the Defendant.

## II. DISCUSSION

**A. Fraudulent Conveyance**

The Plaintiff alleges that the Defendant's 1991 transfer of the 20-acre parcel of land was fraudulent and, therefore, the land should be deemed to be owned by the Defendant for purposes of its motion to foreclose. The burden is on the Plaintiff to establish that the conveyance was fraudulent. ***Washington v. Mitchell*, 146 N.C. App. 720, 724, 553 S.E.2d 919, 921 (2001).**

Pursuant to North Carolina's leading case on fraudulent conveyances,

> [i]f the conveyance is voluntary and the grantor does not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors, but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution which is unpaid[.]

***Aman v. Waller*, 165 N.C. 224, 227-28, 81 S.E.162, 164 (1914);** *see also*, **Wilkinson v. United States*, 972 F.2d 345 (table), 1992 WL 188144, \*5 (4th Cir. 1992).** A conveyance is voluntary when the grantor receives something less than a reasonable fair price for the property. ***Wilkinson, supra*, at \*5.** In the case at bar, Plaintiff has shown that the conveyance from the Defendant to his mother in 1991 was voluntary, in that the Defendant received little or no consideration in exchange for the property. Furthermore, Plaintiff has shown that the Defendant was indebted to the United States at the time of the conveyance.

However, the Defendant has put forth the defense that he only held title to the 20 acres of land as an agent for his mother and his conveyance of the land to her in 1991 for little or no consideration was simply the act of conveying title of the land to its rightful owner and not a conveyance that could be deemed fraudulent. Wherever the existence of an agency relationship is asserted by one party and disputed by another, the burden of proof falls on the party asserting the existence of the relationship. ***Harvel's, Inc. v. Eggleston*, 268 N.C. 388, 394-95, 150 S.E.2d 786, 792 (1966).** Under North Carolina law, "'an agency can be proved generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy[.]'" ***Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 599, 394 S.E.2d 643, 650 (1990) (quoting *Colony Assoc. v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 637, 300 S.E.2d 37, 39 (1983) (internal quotations omitted)).** Furthermore, the testimony of the agent himself is

competent evidence to establish the existence of such a relationship. *Northwestern Bank v. NCF Fin. Corp.*, **88 N.C. App. 614, 617-18, 365 S.E.2d 14, 17 (1988).** Where the alleged agency relationship involves a family relationship "unaccompanied by any other facts or circumstances, [the mere family relationship] will not justify an inference of agency, but such relationship is entitled to great weight, when considered with other circumstances, as tending to establish agency." *Partin v. Carolina Power & Light Co.*, **40 N.C. App. 630, 637, 253 S.E.2d. 605, 611 (1979) (citations omitted).**

As proof of the agency relationship with his mother, the Defendant has put forth evidence of a series of real estate transactions which resulted in the purchase of the 20-acre parcel of land at issue. The Defendant testified that in 1987 he discovered that his mother, Elise Greer, had entered into a contract to sell 14.92 acres of land she owned to the Lake Toxaway Company. **Affidavit of Herman E. Greer, filed November 22, 2004 ["Defendant's Affidavit"], at 1; Transcript of Proceedings, filed June 21, 2005, at 35.** The Defendant, believing that the price to be paid for the land was inadequate, had his mother convey the 14.92 acres to him on November 10, 1987, in order to breach her contract with Lake Toxaway Company. **Transcript,** *supra***; Exhibit A,** *attached to,* **Defendant's Affidavit (deed transferring land).** The Defendant testified that he persuaded his mother to do this in order to force Lake Toxaway Company to sue his mother for breach of contract which would publically expose how the contract appeared to take advantage of an elderly widow. **Defendant's Affidavit, at 1; Transcript,** *supra***, at 35-36.** Following this conveyance, the Defendant then began to negotiate with Lake Toxaway Company for a new contract for the sale of the 14.92 acres. **Defendant's Affidavit,** *supra***.** The Defendant first negotiated the sale of 11.51 acres located within the

original 14.92 acres. **Transcript,** *supra.* Following the negotiations but prior to the sale, the Defendant reconveyed the entire 14.92 acres to his mother on December 14, 1987. ***Id.*, at 36; Exhibit B,** *attached to***, Defendant's Affidavit (deed transferring land).** On January 5, 1988, his mother then conveyed the 11.51 acres to Lake Toxaway Company in exchange for monetary consideration. **Exhibit C,** *attached to***, Defendant's Affidavit.** As to the remaining 3.41 acres, the Defendant testified that he negotiated its sale to the Lake Toxaway Company on June 30, 1989, in exchange for a 27.5-acre parcel of land on Highway 64 and an additional monetary consideration. **Defendant's Affidavit, at 1-2; Exhibit C,** *attached to,* **Defendant's Affidavit.** The 27.5 acres was placed in the Defendant's name, instead of his mother's name. **Transcript,** *supra***, at 36.** On the same day and as part of this transaction, the Defendant immediately conveyed the 27.5 acres, obtained in exchange for the 3.41 acres of land, to Duke Power Company for monetary consideration. ***Id.*; Exhibit D,** *attached to,* **Defendant's Affidavit (deed transferring land).** The Defendant claims he took the proceeds from this sale, opened a bank account, and eventually used the money to purchase the 20-acre parcel of land at issue in this case. **Defendant's Affidavit, at 2; Transcript,** *supra.* The 20 acres were purchased on September 13, 1989, and placed in the Defendant's name. ***Id.*, at 36; Exhibit E,** *attached to***, Defendant's Affidavit (deed transferring land).** The Defendant testified that he used the remainder of the proceeds of the sale from the 27.5 acres to construct a log cabin in which he and his mother lived. **Defendant's Affidavit, at 2; Transcript,** *supra***, at 38.** On March 25, 1991, the Defendant conveyed the 20-acre parcel of land to his mother for little or no consideration. ***Id.*, at 36; Exhibit F,** *attached to***, Defendant's Affidavit (deed transferring land).** On March 7, 1994, three years later, Elise Greer conveyed the 20-acre tract to the Greer Farm Trust, which

had been created by written instrument the day before. **Exhibit H,** *attached to,* **United States' Motion for Summary and Default Judgments, filed October 14, 2004 (deed transferring land); Exhibit G,** *attached to* **Defendant's Affidavit (Greer Farm Trust document).**

The evidence presented by the Defendant shows that the 20-acre parcel of land at issue in this case was purchased solely with proceeds directly traceable to the 14.92-acre parcel of land originally owned by Elise Greer. There is no evidence that the Defendant used any of his own money or assets to purchase the land or that any of the land or proceeds was given as a gift to the Defendant by his mother. Though Mr. Greer negotiated the land sales and often had the property conveyed in his name, this evidence is entirely consistent with his claim that he was acting as an agent for his mother. From the circumstances of the series of transactions documented above and the Defendant's testimony, the Court finds that the Defendant has proven by a preponderance of the evidence that he was acting as an agent for his mother in purchasing the 20-acre parcel of land in 1989. *See Partin, supra* **(stating family relationship between two individuals entitled to "great weight" as proof of agency where accompanied with other facts and circumstances tending to show existence of agency relationship).**

The fact that the Defendant held the property in his name for two years before conveying it to his mother does not convince the Court otherwise. The fact remains that the Defendant conveyed the land to his mother in 1991 for little or no consideration; she remained the recorded titleholder on the property for an additional three years before conveying the property to the Greer Farm Trust. Therefore, the Court determines that the Defendant's conveyance of the land to his mother in 1991 was in his capacity as an agent for his mother and, therefore, cannot be voided as a fraudulent conveyance.

**B. Alter Ego or Nominee Theory**

Having found that the conveyance from the Defendant to his mother in 1991 was not fraudulent, the Court now addresses the Plaintiff's argument that the Greer Farm Trust, which currently holds title to the 20-acre tract, should be considered the alter ego or nominee of the Defendant. The Plaintiff has the burden of establishing that the Trust was the alter ego or nominee of the Defendant. ***DP Envtl. Servs., Inc. v. Bertlesen*, 834 F. Supp. 162, 165 (M.D.N.C. 1993) ("The burden of establishing a basis for . . . applying the alter ego doctrine rests on the party asserting the claim.")** If the Plaintiff succeeds in satisfying this burden, the Defendant will be deemed the owner of the property for purposes of its foreclosure and sale.

The alter ego theory has been predominantly applied in North Carolina when determining whether the sole or dominant shareholder of a corporation will be liable for activities of the corporation in violation of the declared public policy or statute of the State. ***See, e.g., Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 790-91, 561 S.E.2d 905, 908-09 (2002).** In these cases, state law requires that for the corporate form to be disregarded the following elements must be shown:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

***Id.* (citing *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985)).**

The same factors are applicable in the context of determining whether other entities, including trusts, may be deemed the alter ego of individuals who possess considerable control over them. After reviewing the evidence put forth in this case, the Court finds that the United States has not met its burden in establishing that the Greer Farm Trust is the alter ego of Herman Greer. The Court acknowledges that the United States has put forth evidence that the Defendant, as Trustee and one of the beneficiaries of the Trust, exercises considerable control over the Trust and the Trust property. The evidence shows that Mr. Greer has acted and filed documents on behalf of the Trust, lives on the Trust property, is responsible for payment of the Trust's property taxes as rent, and has held himself out publically as the owner of the property. **Transcript, *supra,* at 27, 29.** However, this evidence is not inconsistent with the Defendant's status as a Trustee and beneficiary of the Trust, or as a lessor of Trust property. The United States has presented no evidence that Mr. Greer has controlled the Trust property in such a manner as to prevent the other Trust beneficiaries or other family members from using the Trust property. In fact, the Defendant testified, albeit self-servingly, that the other Trust beneficiary and other family members may and, in some cases, have used the Trust property. ***Id.*, at 36-37.** Additionally, there has been no evidence presented to the Court that Mr. Greer has made significant improvements to the Trust property outside of parking his trailer there.

The Court has also determined *infra* that the Defendant's mother, not the Defendant, was the true owner of the 20-acre tract at all times prior to creating the Trust and conveying the property to the Trust. This fact distinguishes this case from other cases in which a trust has been disregarded under an alter ego theory. ***See, e.g., United States v. Scherping*, 187 F.3d 796, 801- 04 (8th Cir. 1999) (finding trusts were alter egos of taxpayers where taxpayers had conveyed**

**their own property into the trusts, and subsequently, continued to live on the trust property and control all aspects of trust);** *United States v. Powell*, **2001 WL 283808, \*7 (D. Ariz. 2001),** *aff'd*, **31 Fed. Appx. 424 (9th Cir. 2002) (finding as a matter of law that the trust was the alter ego of the taxpayers where taxpayers transferred five parcels of land into the trust but continued to act and control the land as if they still owned it).** The Court believes this distinction is important with regard to whether the Defendant's control over the Trust is being used to commit fraud or some other wrong.[1] Here, Mr. Greer never owned title to the 20 acres, except as an agent of his mother, and therefore, has not used the Trust as a shield for his own assets.

Furthermore, the Court has the responsibility to carry out the intent of the Trust settlor based on the language and purpose of the Trust. *Wheeler v. Queen*, **132 N.C. App. 91, 95, 510 S.E.2d 195, 198 (1999).** The Defendant's mother, in creating the Greer Farm Trust, intended to preserve her property for her children's benefit for the duration of the Trust outside of the reach

---

[1] As the Court noted in its March 17, 2005, Memorandum and Order, the undersigned has been unable to find, and the United States has not put forth, any case from within this Circuit or any other, where an otherwise valid trust, created by and funded with the property or assets of someone other than the taxpayer, has been declared the alter ego of the taxpayer simply on behalf of the control exerted over the trust by the taxpayer in his position as a trustee and/or beneficiary. In fact, those cases the Court has been able to find with facts analogous to the case here have reached the opposite result. *See, In re Vebeliunas*, **332 F.3d 85, 92 (2d Cir. 2003) (finding a trust was not the alter ego of the taxpayer-beneficiary where the trust property was purchased with separate funds of and placed in the trust by the taxpayer's wife, despite the fact that the taxpayer lived on and enjoyed the benefits of the trust property);** *Cohen v. United States*, **1998 WL 953979 (C.D. Cal. 1998),** *appeal dismissed*, **210 F.3d 382 (table), 2000 WL 127121 (9th Cir. 2000) (finding testamentary trust, funded with property and assets of taxpayer's father, was not the alter ego of taxpayer, who was trustee and one of the beneficiaries of the trust, despite the fact that the court found that the taxpayer disregarded certain formalities of the trust and failed to maintain an arms-length relationship with the trust).**

of their creditors.  **Exhibit G,** *supra*, **¶¶ 23, 32.**  The Defendant's use of the Trust property is consistent with this intention.  In sum, the Court finds that the United States has failed to meet its burden of proving that the Greer Farm Trust is the Defendant's alter ego.

Similarly, the Court finds that the United States has not met its burden in proving that the Greer Farm Trust is the nominee of Herman Greer.  In *Hill v. United States*, the Court considered what factors should be considered under North Carolina law when determining nominee status for purposes of attaching federal tax liens on one individual's property based on the tax liabilities of another.  ***Hill v. United States*, 844 F. Supp. 263, 271 (W.D.N.C. 1993).**  After noting the absence of North Carolina cases dealing with nominee status, the Court looked to other federal court decisions determining nominee status for guidance.  *Id.*  Among those factors recognized by *Hill* were the structure of the transaction placing the property in the hands of the nominee, "the treatment by the taxpayer of the asset as his own, control over the [alleged nominee] by the taxpayer or a close relationship between them, use of the [alleged nominee's] funds to pay personal expenses of the taxpayer, transfer of the property to the [alleged nominee] for a nominal sum, . . . the fact that the [alleged nominee] supported the taxpayer[,] . . . whether the taxpayer expended personal funds for the property, whether the taxpayer enjoys the benefit of the property, . . . and whether the record titleholder interfered with the taxpayer's use of the property."  *Id.* **(internal citations omitted).**

Examining the evidence presented and the factors identified in *Hill*, the Court finds that while the Plaintiff has presented evidence of the Defendant's control of the Trust and the Trust property, such control does not rise to the requisite level to prove the Trust was the Defendant's nominee.  As discussed, the Trust property was conveyed to the Trust by the taxpayer's mother

and not the taxpayer, and the Defendant's control over the property is not entirely inconsistent with his position as a Trustee and beneficiary of the Trust or as a lessor of Trust property.

The United States also argues that the failure of the Defendant, as Trustee, to comply with all of the provisions and conditions of the Trust is further evidence of the illegitimacy of the Trust. For example, the Trust provides that a beneficiary is not permitted "to control the Trustees in any way or dictate the management or investment policies to the Trust, or determine the disbursement of Trust income or corpus." **Exhibit G,** *supra***, ¶ 22.** Mr. Greer, as a beneficiary and the sole Trustee, is in violation of this provision. However, the failure to abide by the terms of a trust by a trustee does not render the trust invalid. Instead, the trustee would be in breach of his fiduciary duty and liable for damages caused by the breach. *See* **76 Am.Jur.2d** *Trusts***, § 375 ("[A] violation of plain provisions or conditions [of a trust] renders a trustee liable for any loss resulting therefrom.")** The same would hold true with regard to the failure of the trust to obtain a tax identification number and file income tax returns as required by express terms of the trust.

The Court finds that the United States has failed to meet its burden of proof by a preponderance of the evidence that the Greer Farm Trust is the alter ego or nominee of the Defendant, and the Greer Farm Trust will not be disregarded for purposes of foreclosing on the Trust property in order to satisfy the Defendant's tax liabilities. Therefore, judgment will be entered in favor of the Defendant.

**C. Defendant's Subsequent Motions**

As to the Defendant's motion to appeal in *forma pauperis*, the Federal Rules of Appellate Procedure provide that

> a party to a district court action who desires to appeal in forma pauperis must file a motion in the district court. The party must attach an affidavit that:
> (A) shows in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay or to give security for fees and costs;
> (B) claims an entitlement to redress; and
> (C) states the issues that the party intends to present on appeal.

**Fed. R. App. P. 24(a).** The Defendant has filed an affidavit, demonstrated his inability to pay or to give security for fees and costs, has claimed an entitlement to redress, and has stated the issue he wishes to appeal. Therefore, having satisfied the requirements under the Rules, and the Court having determined that the Defendant seeks to appeal in good faith, the Court grants the Defendant's motion to proceed in *forma pauperis* on appeal.

As to the Defendant's motion to receive a trial transcript at Government expense, section 753 of the United States Code provides that "[f]ees for transcripts furnished in [proceedings not under § 2255] to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge . . . certifies that the appeal is not frivolous." **28 U.S.C. § 753(f).** In the case at bar, the Court determines that the issues Defendant wishes to appeal are not frivolous and present a substantial question for the Fourth Circuit to consider. Therefore, Defendant's motion to receive a transcript at Government expense is granted.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion to foreclose and decree the sale of the 20-acre tract held by the Greer Farm Trust is **DENIED**; a Judgment is filed herewith.

**IT IS FURTHER ORDERED** that Defendant's motions to proceed on appeal in *forma pauperis* and to receive a copy of the trial transcript at Government expense are hereby **ALLOWED.**

**Signed: July 7, 2005**

*[signature]*

Lacy H. Thornburg
United States District Judge